Michael Saltzman of the law firm of Goldberg Segala, representing Regent Insurance Company. And your honors, I would like to request two minutes of rebuttal at the very end. Okay. As the panel is well aware, this is an insurance coverage action concerning determining if liability coverage exists for an underlying claim for wrongful use of civil proceedings asserted under the Pennsylvania statute, commonly referred to as the Bragg-Tragonetti Act against the Strausser appellees. Coverage B of Appellant Regent Insurance Policy provides coverage for personal and advertising liability arising out of malicious prosecution. However, Regent's policy also contains an exclusion that states that the insurance does not apply to personal and advertising injury caused by or at the direction of the insurer with knowledge that the act would violate the rights of another and would inflict injury. Can you say that again, please? I missed the last part of what you said. Well, the Regent policy also contains an exclusion that states that the insurance does not apply to personal and advertising injury caused by or at the direction of the insurer with knowledge that the act would violate the rights of another and would inflict injury. This appeal concerns whether the underlying wrongful use of civil proceedings claim as alleged falls within this knowing violation of rights of another exclusion. Now, it may come up to me, is the term advertising injury as used in this policy, is that pretty common within the industry? It's defined in the policy, but I've never seen advertising injury, the phrase, used this way before. Yes, Your Honor, it is a relatively common term in business policies. Briefly, this case has a long and tortured history going back involving a series of real estate deals in the early 2000s between the Strouser Appellees and the underlying plaintiff with Segal Entities. It resulted in the Strouser Entities filing a lispendence and complaint to stop a land transaction between the Segal Entities and the underlying plaintiff with Segal Entities. Well, you know, the truth is we do know the facts. We've read the reason, we're aware of the underlying disputes and the various suits. In the underlying complaint, which is, I believe, 36 pages and approximately 128 paragraphs, if I'm correct, the allegations against Strouser are for willful, intentional conduct. The complaint seeks punitive damages because the conduct was so willful and intentional. Counsel, one moment. Judge Cowen here. Does the language of the complaint about how no reasonable person could have believed that the right of first refusal provision supports the claims clearly implicate the concept of negligence? No, Your Honor. I believe when, as we pointed out in our brief, when you read the paragraph in its entirety, the allegation is no reasonable person could have even thought that they were acting reasonably under these circumstances. When you talk about reasonable person, though, aren't you, don't you find necessary implication to indicate the concept of negligence? No, Your Honor. And in this case, I think that the issue is you have to look at the complaint in its entirety. As we all know in analyzing insurance coverage cases, the analysis is limited to the four corners of the complaint and the four corners of the insurance policy. If you look at the breadth of the allegations contained throughout the complaint, they talk entirely of intentional acts. There are no allegations that the parties, the Strouser entities, knew or should have known they were doing something improper. The allegations in their entirety were that the allegations were intentional and they intended to cause the actual harm that actually they allege. So, in deciding the parties' cross motions for summary judgment, the District Court ruled that the region policy exclusion was ambiguous and, therefore, that there must be justice for the underlying wrongful use of civil proceedings. And the court ordered the region was required to defend and indemnify the Strouser defendants. The court ruled that the region policy was ambiguous by reasoning that the underlying claim required an element of intent through either malice or improper purpose. So, basically, the court was saying that the coverage and the exclusion was illusory because in the court's opinion, as stated in the court's opinion, this coverage is an intentional act. And that the coverage, on one hand, was provided and, on the other hand, taken away and there could never be coverage under this act. Counsel, did you cite, was it you or the appellee that cited ICD Industries in your brief? I forget now which one. But in ICD Industries, the District Court rejected the amendment approach but also emphasized that an insurer has a duty to defend potentially covered claims grounded in the complaint. Now, why shouldn't we conclude that the underlying complaint meets this very broad standard? Well, for this reason, Your Honor, what the appellees are trying to argue and which the lower court stated, the appellees acknowledged that the exclusion is clear and unambiguous. What they are trying to argue… Where did they acknowledge that? In their brief, they acknowledge that the… Five minutes left. …standard… I'm sorry? No, you're saying five minutes left. Go ahead. I'm sorry. Okay, I'm sorry. In their brief, they acknowledge that there can be coverage, that the act does provide coverage for gross negligence. The exclusion is for intentional acts. And I'm sorry if I got off the track, Your Honor. But what the judge and what appellees argue is that they could potentially amend their complaint to try to make it comport with the intentional act exclusion. And that is what the court relied upon. And that is incorrect. This case was filed in 2007. If you were to believe that theory, there could never be a final determination of an insurance coverage dispute because the parties could allege that sometime in the future, the complaint can be amended, for example, in this case, to allege negligence. Well, this complaint cannot be amended 13 years after the fact. The situation where a complaint can be amended is where the specific allegations may have included both intentional and negligent acts. That's simply not the case in this situation. They also allege that if theoretically the complaint can be amended, but this isn't the appellee's complaint. This is a third party's complaint that I submit to Your Honors cannot be amended 13 years after the fact, which merely would be an amendment to try to find coverage under the policy. Well, this is Intergent Kidd. Maybe I'm missing something here, but it seems to me we're overthinking this case. Malicious prosecution is defined under paragraph 4, 4B, I guess, of the definitions phrase. Malicious prosecution is specifically defined there to be included within the concept of advertising injury. Given the way the Strasser action was crafted in that it alleged right of first refusal against all of the entities was only two agreements had a right of first refusal in it. The triggering event of that right of first refusal, if I'm not mistaken, never occurred. So the condition preceding to having that right, that never happened. Isn't that the end of this matter? I mean, doesn't that get us to malicious prosecution, i.e. bodily advertising injury, and isn't that the end of it? That's the exclusion? You actually broke up a little bit, and I did not hear your question. Okay, I don't know. It seems to me that maybe we're overthinking this, that malicious prosecution is specifically defined to be within the concept of advertising injury. Here we have a situation where in the Strasser complaint, they alleged the right of first refusal on all four agreements. Only two of those agreements had a right of first refusal, in addition to which the right of first refusal was subject to a condition preceding which never occurred. So even if there was a right of first refusal after all four agreements, the condition preceding which would have vested that right of first refusal never occurred. Therefore, there was no ability to act on any right of first refusal. Why doesn't that get us within the definition under 14 of advertising injury, i.e. malicious prosecution? It seems to me that it's a lot simpler than we're making this case. Your Honor, as this court has acknowledged, the malicious prosecution act does not require intent. The lower court indicated in its opinion that intent is required. Let's assume the lower court was right. Given the language of the condition of the right of first refusal, one could clearly find, maybe some objection is not the right level to do that. One could clearly find intent where you're alleging a right of first refusal against two agreements which didn't contain the right to begin with. And as to the agreements that didn't have the right of first refusal, the condition preceding never happened. It was never triggered. So one could find an intent even if intent were required. I'm not suggesting it is required. But if it were required, isn't there enough there to find intent even at summary judgment? Well, we agree. It was an intentional act. And it was alleged to have been an intentional act. And that's why the exclusion applies. Because it was an intentional act. It was alleged to have been an intentional act. And it was alleged that the act was done to cause the very harm that the underlying plaintiffs are alleging. And that's the purpose of the exclusion based upon the allegations in this complaint. Counsel, time has expired. Thank you. We reserve two minutes. We'll hear back from you. Mr. Campbell? Yes. If it pleases the Court, Your Honor, my name is Pat Campbell. I represent the appellees in this matter with the law firm of Montgomery, McCracken, Walker, and Rhodes. Mr. Campbell, did you have a question? Let me start off with this question. Let me start it off. Judge Cowan here. Didn't the underlying complaint exclusively implicate intentional and knowing conduct? You know, after all, didn't the complaint allege that the defendants knew there was no right of first refusal before the first lawsuit was filed? Judge, the reading of the—the most reasonable reading of the complaint that I see is the one that you had when you questioned Mr. Sulzman. And that is that it did not exclusively—there's a lot of hyperbole and rhetoric in there and hyped-up language, but when you sift through it, it does mention conduct which is less than intentional, gross negligence, and negligence. Mr. Campbell, it's Judge Bevis. Could you point me to specific allegations in specific paragraphs that are fairly read as saying that gross negligence suffices for what's being argued here? I did not see that. Paragraphs 108 and 123, Judge, in the complaint. Which language in those paragraphs? It refers to the—I don't have the paragraphs in front of me. I have the notes in front of me. But the language in those paragraphs refer to the fact that it was not—what they did was something that a reasonable person could not have done. In other words, they didn't act reasonably. And that the actors could not have had a reasonable basis to believe that they could bring the claims that they brought. And, Judge, it's not just me who reads it that way. I would say that if you look at Judge Schmeal's opinion in the recent motion for summary judgment in the underlying case, 2019 Westlaw 2450416, at page 11, he characterizes the gist of the claim as one being based on gross negligence. Counsel, I'm looking at the complaint. The complaint in the beginning of Joint Appendix 2 has only 109 paragraphs. And paragraph 108 just says, consequently, contractual liability exclusion applies to bar coverage on the contract-based claims. Can you point me to anything you're in? Which complaint are we in now? Are you in the—not the declaratory judgment complaint. You're talking about amended declaratory judgment complaint? No, I'm talking about the underlying complaint in the sponsor complaint. Okay. Where? Where are we looking? I cited them in my brief, but let me— Underlying complaint. Defendant's motion for plaintiff's motion, regent's declarant. Complaint filed in Segal Action. Yeah. Attached is Exhibit A to the declaratory judgment complaint. So that is at—looks like it's at Joint Appendix 70 to 107. All right. So let's go through this. Where do you—I've got it up. And what you're pointing to, when I look at paragraph 108, you're pointing to knowing there was no reasonable basis to the claim being advanced. I don't understand how saying knowing and then saying no reasonable basis makes it a negligence rather than a knowing claim. The word knowing is in paragraph 108. Well, I mean, the question here is whether they're alleging it was an intentional act or it was—whether liability is based on intent or something less than intent. And the way I read that paragraph is that it leaves open the possibility that the claim could be based on something less than intent. Sure, there's a lot of, you know, intent to harm, intent to do this, and intent to do that. But when you get down to it, they're also asserting that he acted in a grossly negligent matter and without a reasonable basis. And— Where is grossly negligent? Let's assume that the word knowing means knowing and not grossly negligent. Let's turn to paragraph 123. Primarily for the improper purpose of attempting to secure contractual rights, indeed, no reasonable person could have believed. So that's what you're leaning on. You're leaning on the improper purpose and then no reasonable person could have believed. You think that phrase gets you below knowledge to gross negligence. Is there anything else in the complaint that supports it apart from that one phrase? Well, I think it's paragraphs 108 and 123. Okay. Yes. And like I said, it's not just me. The Siegel plaintiffs agree. They refer to, in the declaratory judgment action, they refer to the insurance company's argument that this complaint is based solely on intentional conduct as misdirected. And that's at Joint Appendix page 481, paragraph 68. Okay. How about paragraph 125, willful, wanton, and malicious conduct? I'm not saying that they didn't allege that intentional conduct was involved. I'm saying that they alleged both. And the question is, are there allegations that potentially bring this within coverage? Okay. So I think you have to take apart, take aside the rhetoric and hyperbole about intent. Anybody could plead that. The question is- Well, counsel, I'm just counting it. You know, your complaint there makes us in a position where we've got to read tea leaves here. Let me ask you a new question. What should we make of the allegations by Mr. Schrauser admitting at a meeting after the Northampton County lawsuit he filed that he knew that his company possessed no right of first refusal with regard to, you know, the single-family lots? What do we make of that? You said he knew that he had no right of first refusal. Well, first of all, Judge, I'm not saying, like I said, I'm not saying that they didn't use language in there that triggers intent. I'm saying that they also used language that triggers something less than intent. And the question is whether or not there's a potential claim, a potential covered claim that's been asserted here. So it's- Did you say negligence anywhere in that complaint? Well, I mean, the word negligence does not appear, Judge. But the fact that they're talking about lacking a reasonable basis, to me, is negligence. And I said, like I said, it's not just me. It's Judge Schmeal and it's Siegel as well. That's the same way that they read the complaint. And this court in the Frog Switch case, by the way, Judge, in a case like this where you're talking about something that's really- we're overcomplicating this because in the Frog Switch case on page 746 of note 2, this court explained that there's a reason why the court addresses not only the complaint as pled, but the complaint as could be amended. And it doesn't, as Mr. Saltzman said, apply to all types of insurance claims. It applies to those types of claims that are based on torts, where state of mind doesn't matter. And malicious prosecution and defamation, for example, are torts like that, where you can have liability based on negligent conduct or intentional conduct. And everyone knows how easy it is in the federal court to amend a complaint 12 years later, even after trial. Except that I think your friend on the other side has a point that on that standard, everything is always going to be covered because we can always hypothesize something that could be amended. No, Judge, only in cases of torts where state of mind doesn't matter. And I have to draw you back to the fact that what we're talking about here is a covered provision that says we're going to cover malicious prosecution, we're going to cover defamation. These are the torts we're going to cover under the heading of advertising injury. And this was specifically added by the insurance industry to cover torts that are traditionally considered intentional torts. Your argument is completely inconsistent with the fundamental principle that the four corners of the underlying complaint, And for me to read tea leaves and find negligence out of some language which is very, very difficult to scrutinize, it just doesn't make sense. And I see nothing here which says negligence in so many words or words very close to it. Judge, can you have negligence in a malicious action? Doesn't that require something more than negligence? Malicious prosecution can be based on gross negligence, which is a form of negligence. Gross negligence. So you're abandoning the basis of the decision below in your favor. The court below is incorrect. In saying what? You are not taking the position that any intent is required here. I'm saying that when you... No, you're right. It was not my position below. It was the insurance company's position below that malicious prosecution was only an intentional tort. I think that the way the Pennsylvania statute is drafted, there is a possibility of liability for something less than intent. And that's why I bring you back to note two in the Frog Switch case. And I'm not saying that in every type of coverage dispute, you have to look at whether or not the complaint can be amended. I'm saying that in these types of cases, where you have an express coverage provision, where you have an intentional tort that is expressly covered, and where there could be a finding of liability on something less than intent, where state of mind doesn't matter, then the ability to... Even if there wasn't a mention of negligence or something less than intent in the complaint, then you have to look at whether it could be amended to include it. And that's this court's holding in the Frog... Or that's this court's explanation in the Frog Switch case at note two. And the other thing is, you know, you're eviscerating coverage, you know. The insurance company has stated on a number of occasions below, if you look at Joint Appendix pages 354 and 386, they say that malicious prosecution cases always require an element of intent. How can they say that and expressly cover it, and then on the other hand try to use a general exclusion to carve it out? This is the area where the insurance companies thrive. They create these ambiguities. They know what the problem is. They fail to address it with specific language. And then they reserve for themselves the possibility that they can take whatever position they want to take. I mean, let's face it. Well, counsel, let me ask something. Well, suppose we allow you to be remanded back to the district court with the provision that you are allowed to, if you want to, specifically allege negligence as the conduct in this case, along with intentional tort, which you also have. Would you be satisfied if we amended it, if we held that there is coverage here provided that within 30 days you file an amended complaint specifically saying that the conduct on your part at most was negligence? Would I be satisfied? If I had a wish list, my wish list would be that the district court's decision would be affirmed. If that decision was not affirmed and the court wanted to refer it back down for an amendment, that would be on my wish list, but that would not be the top. I think that there is coverage as alleged right here. Well, suppose we say that you say there's negligence, and some of the language here says negligence. Suppose we make you put your money where your mouth is and make you make those allegations. Could you successfully, and in truth, based on the underlying facts of this case, make a claim of actual negligence here? Well, point of clarification, Judge, that's not my complaint. Based on the facts as they have played out in 12 years of discovery and a summary judgment motion and two underlying arbitrations, yes, there could be a claim for something less than intentional conduct here. Yes. I don't have control over it. Unless you want to specifically say it. I don't have control over whether... Well, how do you make this complaint? I don't see a claim of negligence here. If you have one, I would say, well, then revenge it down and let you make your claim for negligence. The problem is with the facts of this case, as I understand, there's no way that you could truthfully make that claim that this conduct here was a result of carelessness. Judge, I can tell you this. First of all, it's not my complaint. So it's not my claim. But I can tell you this. After 12 years of discovery, those rights of first refusal, which they are contending we didn't have the right to exercise, we, in fact, did have the right to exercise, and we won at an underlying arbitration that was peeled off of that case. So... I thought the arbitration was dismissed. No, no, no. Not my arbitration. My arbitration won. Mr. Shouser won $20 million for Mr. Siegel. And that was affirmed by the Pennsylvania Supreme Court. And that was why all of this was on hold, because everybody thought that once the underlying arbitration played out, the federal case would be gutted. It ended up surviving. But those rights of first refusal, my client prevailed on in arbitration to the tune of about $20 million. Counsel's time has expired. On two of them or on all four? I'm sorry? On two of them or all four? On two of them. But keep in mind, for malicious prosecution, you only have to prevail on one of the claims asserted. So if you assert seven claims against somebody and you only prevail on one, that's not considered a favorable termination for purposes of malicious prosecution. Okay. Thank you. Thank you, Mr. Gamble. Mr. Softman, you reserve two minutes. Yes. And I'll be very brief, Your Honor. It is interesting to note the efforts that Appellee's Counsel went to bring in extraneous information. That's not part of the record in this case. And it's not part of the underlying complaint. And as Your Honor has correctly pointed out, we have to simply look at the allegations contained in the four corners of the complaint. Counsel is incorrect to say that a general exclusion was applied here. The exclusion that applied was the exclusion specifically to this particular coverage. It was not a general exclusion to the policy in general. And that's one reason to keep that in mind, because it's important that counsel is trying to determine it that way, and it's important to understand it's absolutely incorrect. The last point I would make is that we, of course, have argued that the negligence standard applied at the hearing, at the summary judgment level. It's in the record. It's in the hearing. And it's in our briefs. And counsel is correct. This complaint cannot be amended. It's not his complaint to amend. And in a coverage case, we are left to make the determination if there's coverage based upon the four corners of this complaint as it stands here today, some 13 years after the case was filed. Thank you, Your Honors. Okay. Thank you both, gentlemen. We'll take a matter under advisement. And, Ted, do you want to set up the next case? Could I request a transcript? Could the parties work together? Sure. Sure. Could you gentlemen check with Mr. Cain, and he will tell you how to get the transcript, and the cost should be divided between the two of you. Thank you very much. Thank you. Wonderful.